IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **DWAYNE S. ARMBRISTER, LAWRENCE GUARNIERI, DARON WILLIFORD,** and **RANDOLPH PETRON,** individually and on behalf of the classes described below | ) ) ) ) ) ) | |
| | ) | No. 12 C 246 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| **PUSHPIN HOLDINGS, LLC,** | ) ) | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

This putative class-action complaint accuses Pushpin Holdings, LCC ("Pushpin") of unlawful lending practices, including filing suits on time-barred debts, threatening to report old debts to credit bureaus, and failure to honor the arbitration clauses in its contracts. Pushpin brings the instant motion to dismiss pursuant to Rules 12(b) and 9(b) of the Federal Rules of Civil Procedure. In the alternative, Pushpin asks for an order compelling Plaintiff Dwayne S. Armbrister ("Armbrister") to arbitrate his dispute with Pushpin and dismissing or staying this lawsuit as to Armbrister's claims pending arbitration. For the reasons stated, Armbrister's claims in Count I and Count II are stayed pending arbitration, and the remainder of Count II is dismissed, with leave to replead within 30 days of the date of this Order.

In ruling on this motion to dismiss, I will accept the facts in the Second Amended Complaint ("SAC") as true. Pushpin is a limited liability company organized under Delaware law. Plaintiffs allege that Pushpin's principal business is filing suit, or threatening to file suit, on time-barred debts that it purchased for as little as a penny on the dollar. The named Plaintiffs, Armbrister, Lawrence Guarnieri ("Guarnieri"), Daron Williford ("Williford"), and Randolph Petren ("Petren") are businessmen who leased equipment from a unit of CIT Financial ("CIT"), in Chicago.

**A. Facts Relating to Armbrister**

Armbrister operated a company called Ace Security Laminates, LLC, in North Carolina. On or about Sept. 6, 2002, he leased two credit card processing machines from CIT, and personally guaranteed the lease. Armbrister's business failed, and the last payment made on the lease was in early 2003. Armbrister returned the equipment at that time, and heard nothing further about the lease until May 2011.

On May 16, 2011, Armbrister received a delinquency letter from Alethea Wiggins, an account manager in the Legal Collections Department at Pushpin. Wiggins wrote that "[d]ue to your continued delinquency and failure to pay the outstanding balance listed above, your account has been referred to my department to

**initiate a civil action** against you as allowed under your personal guaranty in your lease agreement." (emphasis in original) (Dkt. No. 54, App. A to SAC). Wiggins added: "Please be advised that **your delinquency has been reported to the credit bureaus as a chargeoff or collection account** and will be reflected on your credit report." (emphasis in original) (*Id.*)

In November 2011, Armbrister received a letter from Pushpin's attorney demanding payment of $7,628.22 as well as a draft verified complaint for breach of a personal guaranty. (Dkt. No. 54, App. B to SAC). The draft complaint was to be filed in the Circuit Court of Cook County, but Pushpin has not filed it. The guaranty signed by Armbrister, but not those of the other named plaintiffs, contains an arbitration provision. It provides, "Any claim or controversy, including any contract or tort claim between or among us, you or any Guarantor related to this Lease, shall be determined by binding arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration Rules of the American Arbitration Association." (Dkt. No. 54, App. B.)

### B. Facts Relating to Plaintiff Guarnieri

In 2001, Guarnieri opened a restaurant in Rancho Cucamonga, Calif. In February 2001, he leased equipment from CIT and personally guaranteed the lease. According to Pushpin, the restaurant defaulted on the lease on Nov. 5, 2001. Guarnieri

3

filed for personal bankruptcy in the summer of 2001, and believes that the liability was discharged at that time.

In October 2011, Guarnieri received a form demand letter and a draft form complaint similar to the one Pushpin sent to Armbrister. In those documents, Pushpin sought $11,963.04 and threatened to file suit in the Circuit Court of Cook County. (Dkt. No. 54-1, App. D to SAC.) Pushpin filed a verified complaint for breach of a personal guaranty on Nov. 2, 2011. (Dkt. No. 54-1, App. E to SAC.) No action has been taken in the state court case.

### C. Facts Relating to Plaintiff Williford

Williford operated a car wash in Anderson, South Carolina as a sole proprietorship. In January 2001, he leased equipment from CIT and personally signed the lease. According to Pushpin, the car wash defaulted on the lease on Dec. 18, 2001. Williford heard nothing further about the lease until mid-2011. On information and belief, at that time he received a delinquency letter similar to the one mailed to Armbrister. Also on information and belief, Plaintiffs allege that Williford received a demand letter and a draft complaint similar to the one described above. On Nov. 30, 2011, Pushpin filed suit against Williford in Cook County Circuit Court. (Dkt. No. 54-1, App. F to SAC). Nothing has happened in the state court case.

### D. Facts Relating to Plaintiff Petren

Petren operated a business in Florida, and on Feb. 12, 2001, he leased a credit card processing machine from CIT.  His business failed in 2001 or 2002, and according to Pushpin, the business defaulted on the lease on Dec. 21, 2001.  Petren heard nothing further about the lease until the fall of 2011.  At that time, on information and belief, he received a delinquency letter similar to the one received by Armbrister.  On Nov. 30, 2011, Pushpin filed suit against Petren in the Circuit Court of Cook County.  (Dkt. No 54-1, App. G to SAC.)  Nothing has happened in the state case.

### E. General Allegations

Plaintiffs allege that the delinquency letter amounted to a wrongful threat of credit reporting by Pushpin because under the Fair Credit Reporting Act ("FCRA") a delinquent debt that is more than 7 years and 180 days old cannot appear on a person's credit report.  15 U.S.C. § 1681c(a)(4).  The reporting period with respect to Plaintiffs' debts had expired at the time Pushpin sent the delinquency letter, and Pushpin knew or should have known this.

Plaintiffs additionally allege that the applicable statute of limitations for the collection of a debt based on the breach of the guarantees is 810 ILCS 5/2A-506, which provides, in relevant part, "[a]n action for default under a lease contract, including breach of warranty or indemnity, must be commenced

within 4 years after the cause of action accrued." All the debts at issue here were barred by the statute of limitations prior to Pushpin's having filed suit, Plaintiffs contend.

Plaintiffs further contend that Pushpin regularly files suit in Cook County Circuit Court in regard to similar leases against small business owners who live in various locations throughout the United States. The amount demanded typically does not exceed $10,000, and in many cases is far less than that. Plaintiffs attached to their complaint a list of more than 300 Cook County filings by Pushpin, beginning in August 2011. On information and belief, Plaintiffs allege that most of the debts involved CIT leases similar to the ones signed by Plaintiffs and of a similar age.

Plaintiffs contend the lawsuits were wrongfully filed because the representations relating to credit reporting are false, the claims are time-barred, and many of the CIT leases, like Armbrister's, provide for mandatory arbitration before the American Arbitration Association ("AAA").

Plaintiffs contend that Pushpin files suits in Cook County, rather than arbitrating the claims as required, in order to obtain fraudulent default judgments. A lawsuit filed in the Municipal Department of the Cook County Circuit Court will result in a default judgment unless the defendant appears either personally or by an attorney. An AAA arbitration, by contrast,

allows for resolution by telephone or through written submissions. Because many of the Plaintiffs live in other states, it is not economically feasible for them to come to Cook County to defend these suits. By filing or threatening to file these lawsuits that they know Plaintiffs cannot afford to defend, Pushpin sought to prevent debtors from asserting valid defenses, and to obtain default judgments, Plaintiffs allege.

Plaintiffs seek recovery on behalf of three classes. Class A consists of all persons sued or threatened with suit in Illinois by Pushpin on a lease containing an arbitration clause. Armbrister is the class representative. Class B consists of all people sued or threatened with suit in Illinois by Pushpin on a lease where the date of default or last payment occurred more than four years ago. All plaintiffs are class representatives. Class C consists of all people who were sent a delinquency letter by Pushpin that referred to credit reporting with respect to a defaulted lease where the default occurred more than 7 years and 180 days prior to the suit or threat. All plaintiffs are class representatives.

Count I, brought on behalf of Class A, seeks an order compelling Pushpin to arbitrate the claims against lessees or guarantors pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. It seeks: (1) an injunction requiring Pushpin to file individual arbitrations before the AAA, (2) an

order requiring Pushpin to vacate any judgments it has obtained against class members;[1] and (3) the return of any funds obtained pursuant to those judgments.

Count II, brought on behalf of all three classes, alleges that Pushpin violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") when it threatened to file, or did file suits: (1) when it was required to arbitrate; (2) on debts that were time-barred; (3) in an effort to take advantage fo the fact that a personal appearance is required in Cook County but not under the AAA rules; and (4) when the amount claimed made a personal appearance in Chicago economically impracticable. Plaintiffs similarly allege that falsely representing that time-barred debts could appear on credit reports amounted to a deceptive practice under the ICFA. Plaintiffs seek: (1) an injunction restraining Pushpin from filing or threatening to file suit on leases containing arbitration clauses; (2) an injunction restraining Pushpin from filing or threatening to file suit on leases where the alleged default occurred more than four years ago; (3) an injunction restraining Pushpin from reporting or threatening to report debts to credit bureaus that are more than

---

[1] Pushpin seeks to dismiss Count I in part on the basis that vacating state court judgments would violate the *Rooker-Feldman* doctrine. *See Van Harken v. City of Chicago*, 103 F.3d 1346, 1349 (7th Cir. 1997). In their response, however, Plaintiffs indicate that Pushpin has not yet obtained any judgments. As such, and given the disposition of Count I, I need not address this issue at this time.

7 years and 180 days old; (4) disgorgement of all sums obtained by Pushpin using the tactics described in the complaint; (5) an order requiring Pushpin to vacate any judgments it obtained against class members; (6) punitive damages; and (7) attorney's fees and costs.

## II.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Although a complaint's factual allegations need not be detailed, they must provide more than "labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege enough to raise a right to relief above the speculative level." *Ruiz v. Kinsella,* 770 F. Supp. 2d 936, 941–42 (N.D. Ill. 2011) (citing *Twombly,* 550 U.S. at 555). In ruling on such a motion, the question is whether the facts, accepted as true, "present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).

## III.

**A. Count I**

As noted above, in Count I, brought on behalf of Class A, Armbrister seeks to compel Pushpin to file individual

arbitrations under the FAA. Section 4 of the FAA provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C § 4. Pushpin argues that this lawsuit is the first demand for arbitration by Armbrister, and that Armbrister's allegations that Pushpin threatened to sue him and served him with a draft complaint are insufficient as a matter of law to constitute a rejection of arbitration.

Under the FAA, arbitration may be compelled if three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate. *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Only the third element is at issue here.

Relying primarily on cases from the Second and Third circuits, Pushpin argues that a refusal to arbitrate can be established only if the non-moving party files a lawsuit or is ordered to arbitrate a dispute and fails to do so. *See, e.g., LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir.

2004) ("A party has refused to arbitrate if it "commences litigation or is ordered to arbitrate th[e] dispute [by the relevant arbitral authority] and fails to do so."); *PaineWebber Inc. v. Faragalli,* 61 F.3d 1063, 1066 (3d Cir. 1995) (holding that an action to compel arbitration accrues "only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute.").

In *Paine Webber*, the Third Circuit held that sending the opposing party a draft complaint that had not been filed in court did not constitute an "unequivocal" refusal to arbitrate because it did not rule out a willingness to arbitrate. *Id.* Other courts, however, have disagreed with the *Paine Webber* court's holding that a refusal to arbitrate must be "unequivocal." *See, e.g., Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 6-715 SC, 2011 WL 6014438, at *2 n.4 (N.D. Cal. Dec 2, 2011).[2] The parties have not presented, nor have I found, any Seventh Circuit

---

[2] In *Beauperthuy*, the issue was whether a refusal to arbitrate in that district, coupled with an expressed willingness to submit to arbitration elsewhere, amounted to a refusal to arbitrate. 2011 WL 6014438, at *2. The court held that it did, finding that to hold otherwise would render the arbitration agreement meaningless by the parties' inability to agree on a satisfactory location. *Id.* at *4.

cases interpreting the meaning of a party's "failure, neglect or refusal to arbitrate" under Section 4 of the FAA.

In arguing that it has not refused to arbitrate Armbrister's claim, Pushpin points to settlement communications between the parties. Its counsel, Scott Silberfein, has submitted a declaration in support of the motion to dismiss stating that after Plaintiffs brought suit, he spoke on several occasions with Plaintiffs' counsel to request that Armbrister arbitrate his dispute pursuant to the binding arbitration clause in his guaranty. (Dkt. No. 51.) Pushpin has never resisted arbitration with Armbrister or filed any action against him, according to Silberfein.

Plaintiffs contend that it is inappropriate for Pushpin to use settlement communications to show that it has not refused to arbitrate. They also contend that Pushpin has in fact brought suit against people with arbitration clauses, attaching to their response a suit brought against Floyd Beard for breach of a guaranty containing an arbitration agreement. (Dkt. No. 56, Ex. 4.)

First, I may consider the settlement negotiations in determining whether Pushpin has refused to arbitrate. *See Zurich Am. Ins. Co.*, 417 F.3d at 689-90.[3] Additionally, Plaintiffs'

_____

[3] Although Pushpin's motion to dismiss is styled as a Rule 12(b)(6) motion, as to Armbrister's claims, it is more accurately

argument that Pushpin has sued others with arbitration clauses is not well-taken because even though the complaint contains class allegations, no class has been certified, and Beard is not a named Plaintiff. Thus, I must determine whether Armbrister's allegations are sufficient to show a refusal to arbitrate by Pushpin. See *Morlan v. Universal Guar. Life Ins. Co.,* 298 F.3d 609, 616 (7th Cir. 2002) ("[U]ntil [class] certification [is granted] there is no class action but merely the prospect of one; the only action is the suit by the named plaintiff[ ].").

Plaintiffs contend that "nothing says that a party who sues 100 persons with identical arbitration clauses must be the subject of 100 separate proceedings to compel arbitration rather than just one." Pls.' Resp., 11. Plaintiffs provide no support for this proposition, but even if it is correct, it does not relieve Armbrister of his responsibility to show that Pushpin has failed to arbitrate the dispute in order to seek relief from this court.

---

viewed as a request to stay the litigation and compel arbitration. *See Seremak v. American Exp., Inc.,* No. 10 C 3463, 2011 WL 3359915, at *3 (N.D. Ill. Aug. 3, 2011) (internal citations omitted). The authority to stay litigation derives not from the Federal Rules of Civil Procedure, but from Section 3 of the FAA, 9 U.S.C. § 3. *Id.* Additionally, in ruling on such a motion, I may consider matters outside of the pleadings. *See Falbe v. Dell, Inc.*, No. 04 C 1425, 2004 WL 1588243, at *1 n. 1 (N.D.Ill. July 14, 2004) (internal citations omitted).

Armbrister has not shown that Pushpin failed to arbitrate this dispute. He has not filed an arbitration proceeding in which Pusphin has refused to participate, nor has Pushpin brought suit against him. I agree with those courts that have held that in the absence of such a step, Armbrister has not shown that he was aggrieved by the failure, neglect, or refusal of Pushpin to arbitrate, so he has not shown an entitlement to relief under § 4 of the FAA. The *Paine Webber* court noted that the requirement of showing a refusal to arbitrate is "little discussed," but important. 61 F.3d at 1067. "[U]nless and until an adverse party has refused to arbitrate a dispute putatively governed by a contractual arbitration clause, no breach of contract has occurred, no dispute over whether to arbitrate has arisen, and no harm has befallen the petitioner-hence, the petitioner cannot claim to be 'aggrieved' under the FAA." *Id.; see also Moses H. Cone Memorial Hospital,* 460 U.S. 1, 21 (1983) ("[a]n indispensable element of Mercury's cause of action under § 4 for an arbitration order is the Hospital's refusal to arbitrate").

While others in the proposed class may have been aggrieved by Armbrister's refusal to arbitrate their claims, only Armbrister's claim is before me. Armbrister, in fact, filed the present action, so in effect it was he who has refused to arbitrate his claims against Pushpin. Plaintiffs do not address that portion of Pushpin's motion seeking to compel Armbrister to

arbitrate his claims against Pushpin, and such an action appears appropriate in light of the broad scope of the arbitration provision in his contract with CIT.  As such, I grant Pushpin's motion to stay Armbrister's claims pending arbitration.

**B. Count II**

While Armbrister is the only class representative for Count I, all Plaintiffs are class representatives for Count II, which alleges violations of the ICFA and is brought on behalf of all classes.  Pushpin contends that Plaintiffs fail to allege any cognizable claim under the ICFA.

The ICFA provides a remedy for "unfair methods of competition and unfair or deceptive acts or practices" in specified commercial transactions."  *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (quoting 815 ILCS 505/2).  To state a claim under the ICFA, Plaintiffs must allege five elements:  (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception.  *Hardaway v. CIT Group/Consumer Fin. Inc.*, 836 F. Supp. 2d 677, 685 (N.D.Ill. 2011) (citing *Dubey v. Public Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 2009)).  Complaints alleging deceptive practices in violation of the ICFA

15

must be plead with sufficient particularity under Fed. R. Civ. P.
9(b), while those alleging unfair practices need only meet the
notice pleading standards of Fed. R. Civ. P. 8(a). *Windy City
Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Srvs., Inc.*,
536 F.3d 663, 670 (7th Cir. 2008).

Plaintiffs allege both unfair and deceptive practices.
First, they allege that Pushpin violated the ICFA when it
threatened to file or filed suits when Pushpin was required to
arbitrate the disputes.  Of the named plaintiffs, only
Armbrister's guaranty contained an arbitration provision.  Since
I have stayed the claims as to Armbrister pending arbitration and
no other named plaintiffs were injured as a result of this
practice, it cannot be the basis of an ICFA claim.  However,
Plaintiffs also allege that Pushpin filed suit on time-barred
debts and that it falsely represented that debts older than seven
and a half years old would appear on credit report when FCRA bars
this.

As to the first allegation, the parties disagree over the
applicable statute of limitations for Pushpin's claim.
Plaintiffs argue that the appropriate statute of limitations is
810 ILCS 5/2A-506, which provides, in relevant part:

> An action for default under a lease contract, including
> breach of warranty or indemnity, must be commenced within
> 4 years after the cause of action accrued. By the
> original lease contract the parties may reduce the period

of limitation to not less than one year.

810 ILCS 5/2A-506 (1).  This four-year statute of limitations, Plaintiffs allege, ran long before Pushpin filed or threatened to file suit against them. Plaintiffs contend that as this is the only Illinois statute of limitations that specifically governs leases of personal property, it controls. *Hernon v. E.W. Corrigan Const. Co.*, 595 N.E.2d 561, 563 (Ill. 1992) (internal citations omitted).

Pushpin contends that their efforts to collect on the guarantees were timely because they fell within the 10-year statute of limitations set out in 735 ILCS 5/13-206.  That statute provides, in relevant part:

> Except as provided in Section 2-725 of the "Uniform Commercial Code" . . . actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing and actions brought under the Illinois Wage Payment and Collection Act shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay has been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay.

735 ILCS 5/13-206.

It is well-established that a guaranty is an independent obligation separate from the underlying contract. *Colonial Am. Nat'l Bank v. Kosnoski*, 617 F.2d 1025, 1030–31 (4th Cir. 1980). "Guarantees invol[ve] duties and impos[e] responsibilities very

different from those created by the original contract to which it is collateral. The fact that both contracts are written on the same paper or instrument does not affect their separate nature." *Id.* Plaintiffs have not presented any cases where the statute of limitations for leases under 810 ILCS 5/2A-506 has been applied to a breach of a guaranty related to a lease, and I have not found any.

However, in similar circumstances, courts within this district have found that written guarantees are subject to the 10-year statute of limitations in 735 ILCS 5/13-206 despite the fact that the statute of limitations on the underlying debt has run. For example, in *Cessna Fin. Corp. v. Brown*, No. 88 C 3369, 1995 WL 462190, at *1 (N.D. Ill. Aug. 3, 1995) the parties disputed whether Illinois' four-year statute of limitations for a breach of a contract for the sale of goods applied to an alleged breach of guaranty, or whether or the ten-year statute of limitations for breach of a written contract applied. The court found that the latter statute of limitations applied because the plaintiff was not suing on the contract for the sale of goods, but rather on the guaranty. *Id.* at *1-*2 (citing *Chrysler Corp. v. Gallagher*, No. 85 C 5930, 1987 WL 6310 (N.D. Ill. Jan. 30, 1987)).

Plaintiffs rely in part on *Fallimento C.Op.M.A. v. Fischer Crane Co.*, 995 F.2d 789, 792 (7th Cir. 1993), in which the

Seventh Circuit held that a note executed in connection with the sale of goods was governed by the four-year statute of limitations for breach of contract for the sale of goods. The Seventh Circuit noted that "[t]he obligation to pay is a fundamental part of the contract for sale. It is not, as plaintiff suggests, separate and distinct from the transfer of the physical possession of the [goods]." *Id.* (citing *Citizen's Nat'l Bank v. Farmer*, 395 N.E.2d 1121 (Ill. App. Ct. 1979)). By contrast, a guaranty is an independent obligation, separate and distinct from the transfer of goods. *Colonial Am. Nat'l Bank,* 617 F.2d at 1030-31. As such, I find that the ten-year statute of limitations in 735 ILCS 5/13-206 should apply to guarantees for equipment leases.[4]

This assumes, of course, that the transactions entered into with Plaintiffs are actually guarantees. Plaintiffs, in their response, contend that some of the guarantees were illusory because CIT's salespeople had the owner of the business sign both as lessee using the either the individual's name or the name of a

---

[4] I note that § 2A-506 applies to "actions for default under a lease contract," and a lease contract is defined by Illinois law as the total legal obligation that results from the lease agreement as affected by this Article and any other applicable rules of law." 810 ILCS 5/2A-103(1). "Lease agreement," in turn, is defined as "the bargain, with respect to the lease, of the lessor and the lessee." 810 ILCS 5/2A-103(k). The statutory language makes no reference to the breach of a guaranty being included in the four-year statute of limitations.

partnership or proprietorship, and then had the same person sign
as guarantor.  In Williford's case, for example, Williford signed
the lease both as lessee and guarantor.  (Dkt No. 54-1, App. E to
SAC.)  An individual operating a sole proprietorship is
personally liable for its debts.  *GMAC, LLC v. Hillquist*,  652 F.
Supp. 2d 908, 919 (N.D. Ill. 2009) (citing *Packard Bell Elec.
Corp. v. Ets-Hokin,* 509 F.2d 634, 637 (7th Cir. 1975)).  If he
guarantees the debt of the sole proprietorship, he is
guaranteeing debts for which is already liable and the guaranty
is meaningless.  *Id.*  Although the ten-year statute of
limitations in 735 ILCS 5/13-206 would apply to true guarantees,
it is possible that Williford's only obligation was as lessee, in
which the four-year statute of limitations applies.  If Pushpin
misrepresented to Plaintiffs that their debts were not time-
barred, when they in fact were, this could amount to a deceptive
practice under the ICFA.  *See Taylor v. Unifund Corp.*, No. 98 C
6921,  1999 WL 33545372, at *2 (N.D. Ill. May 3, 1999).

However, while their allegations of deceptive practices are
sufficiently plead in regard to Pushpin's conduct, Plaintiffs
have not alleged actual damages, which is a required element of
an ICFA claim.  They concede that Pushpin has not obtained
judgments against the Plaintiffs, and it is not clear whether
Plaintiffs have filed an appearance or incurred any expenses in
defending these suits.  In their response, Plaintiffs contend

that nothing has happened in regard to these state court suits, and the papers they attached to their response showed that, at least as of the time of filing their response, Plaintiffs had not been served with the state court complaints. (*See* Dkt. No. 56-1.) While "time and money" spent defending debt collection lawsuits can be an actual injury under ICFA, *see Grant-Hall v. Cavalry Portfolio Srvs., LLC*, --- F. Supp. 2d ---, 2012 WL 619651, at *10 (N.D. Ill. Feb. 24, 2012), it is not clear that either was incurred here.

Additionally, Plaintiffs allege that Pushpin filed time-barred suits in an effort to extort payments from them, but it is not clear whether any of the Plaintiffs have paid these debts. Without specific allegations of actual damages, the filing or threat to file time-barred suits cannot be the basis of a private cause of action under the ICFA. *See Worix v. MedAssets, Inc.*, No. 11 C 8088, 2012 WL 787210, at *7–*8 (N.D. Ill. March 8, 2012). This is true even where Plaintiffs seek injunctive relief. *See Schilke v. Wachovia Mortg.*, 820 F. Supp. 2d 825, 838 n.5 (N.D. Ill. 2011) (collecting cases).

Plaintiffs also allege an ICFA violation on the basis of their allegation that Pushpin wrongfully threatened to report to credit reporting agencies debts that were more than 7 years and 180 days old, and as such not reportable under the FCRA. I note that Plaintiffs' pleading in this regard is confusing.

21

Plaintiffs cite the FCRA in their complaint, and in their response note that threats to report debts that are older than seven and a half years old have been held to be deceptive and unfair in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, f. *See Gonzalez v. Arrow Fin. Srvs.*, 660 F.3d 1055 (9th Cir. 2011). Although Plaintiffs have not brought a claim under the FDCPA,[5] they contend in their response that this presents an analogous situation. Pushpin devotes much of its briefing to arguing that it cannot be liable under either the FCRA or the FDCPA, but Plaintiffs have not brought a claim under those acts. Similarly, Plaintiffs, in their response, devote much of their argument to contending that similar practices have been found deceptive under the FDCPA, without addressing the elements of an ICFA claim. They contend, "A fortiori, an express statement that a debt that can no longer appear on most credit reports '**will be reflected on your credit report**' is unfair, deceptive, and actionable." Pls.' Resp., 10 (emphasis in original). This may be true, but again, Plaintiffs fail to allege actual damages, a required element of a claim under ICFA, so Count II must be dismissed. Because it may be

---

[5] The FDCPA applies only to consumer debt, not the business debts incurred in this case. *See* 15 § U.S.C. § 1692e.

possible for Plaintiffs to allege actual damages in connection with their ICFA claim, they are given 30 days from the date of this Order to replead Count II.

IV.

For the reasons stated herein, Count I, and Plaintiff Armbrister's claims in regard to Count II, are stayed pending arbitration. The remainder of Count II is dismissed without prejudice to Plaintiffs' repleading this count within 30 days of the date of this Order. Plaintiffs' motion to file a surresponse (Dkt. No. 58) is granted, and I have considered that response in reaching this ruling. Finally, Plaintiffs' motion for class certification (Dkt. 22) is denied with leave to reinstate upon the filing of an amended complaint.

**ENTER ORDER:**

_Elain E. Bucklo_

**Elaine E. Bucklo**
United States District Judge

Dated: September 17, 2012